UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENSEN WONG, | CASE NO. C19-1233JLR |
| Plaintiff, | ORDER GRANTING |
| v. | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| NAVIENT SOLUTIONS, LLC, | |
| Defendant. | |

## I.     INTRODUCTION

Before the court is Defendant Navient Solutions, LLC's ("Navient") motion for summary judgment on all claims contained in *pro se* Plaintiff Jensen Wong's complaint. (MSJ (Dkt. # 18).)  Mr. Wong has not opposed the motion.  (*See generally* Dkt.)  As part of the same motion, Navient also requests that the court issue an order directing Mr. Wong to show cause why the court should not sanction him for bringing this action.  (*See* MSJ at 1.)  The court has considered Navient's motion, all submissions filed in support of the motion, the relevant portions of the record, and the applicable law.  Being fully

advised,[1] the court GRANTS Navient's motion for summary judgment and DENIES

Navient's request to issue an order to show cause.

## II.      BACKGROUND

This is a consumer debt case in which Mr. Wong brings a claim under the Fair

Debt Collection Practices Act ("FDCPA"), as well as several tort claims, against his loan

servicer, Navient.  (*See* State Ct. R. (Dkt. # 1-1) at 5-13 ("Compl.")); 15 U.S.C. § 1692 *et

seq*.

## A.      <u>The Loans</u>

Between 2001 and 2010, Mr. Wong took out eight federal student loans ("the

Loans") via the Federal Family Education Loan Program ("FFELP").  (*See* MSJ at 2;

Cannon Decl. (Dkt. # 19) ¶ 30, Ex. 14 ("3/20/19 Letter") at 1; *id.* ¶ 6, Ex. 1 ("2/6/01

MPN"[2]) at 1; *id.* ¶ 7, Ex. 2 ("9/24/01 MPN") at 1; *id.* ¶ 8, Ex. 3 ("7/15/02 MPN") at 1; *id.*

¶ 9, Ex. 4 ("3/26/09 MPN") at 1.)  The original value of each loan ranged from $2,625.00

to $7,000.00.  (*See* MSJ at 2; 3/20/19 Letter at 1; Cannon Decl. ¶ 11.)  In applying for the

Loans, Mr. Wong signed four MPNs, each of which covered one subsidized and one

unsubsidized loan.  (*See* Cannon Decl. ¶¶ 6-10; 2/6/01 MPN at 1; 9/24/01 MPN at 1;

7/15/02 MPN at 1; 3/26/09 MPN at 1.)  The lender on the Loans was Citibank Student

Loans, and the Loans were guaranteed by Ascendium Education Group, Inc. and

Educational Credit Management Corporation.  (*See* Cannon Decl. ¶ 12.)  In September

---

[1] Navient does not request oral argument (*see* MSJ at 1), and the court does not consider oral argument helpful in its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court uses MPN when referring to a Master Promissory Note.

2011, the Loans, which were not in default at the time, were transferred to Navient, which at the time was known as Sallie Mae, Inc. (*See id.* ¶¶ 14-15; 3/20/19 Letter at 1.)

Between October 2014 and November 2018, Navient corresponded with Mr. Wong multiple times regarding requests for forbearance, deferment, and information regarding repayment plans. (*See* Cannon Decl. ¶ 16, Ex. 5 ("10/28/14-11/15/18 Letters").) Navient addressed each of the letters sent during this time to Mr. Wong and included Navient's logo at the top of the first page, and many also included a chart depicting the date, amount, and outstanding principal of each loan. (*See id.*) Mr. Wong did not respond to these letters, except presumably to continue requesting forbearance and other relief from the Loans.[3] (*See id.* ¶ 16.) Navient last received a payment on the Loans on May 17, 2016. (*See id.* ¶ 17; 3/20/19 Letter at 2.)

**B.    The Letters**

On October 18, 2018, Navient sent Mr. Wong a letter concerning the status of the Loans. (*See* Cannon Decl. ¶ 21, Ex. 7 ("10/18/18 Letter") at 1.) The letter notified Mr. Wong that his account was 90 days past due, informed him that Navient was "concerned about the potential impact to his credit history," and provided payment options. (*See id.*) On the second page, Navient provided a list of the Loans and informed Mr. Wong that the letter was "an attempt to collect a debt and any information obtained [would] be used for

---

[3] The record only contains Navient's correspondence to Mr. Wong, not Mr. Wong's correspondence to Navient, during this time period. (*See* 10/28/14-11/15/18 Letters.) However, the letters specifically state that they are responding to requests made by Mr. Wong for the various types of repayment relief that Navient granted. (*See id.*) Nothing in the record leads the court to believe Navient would have granted this relief, which includes forbearance of payments, deferment, and alternative payment plans, without some request from Mr. Wong. (*See id.*)

that purpose." (*See id.* at 2.)  The final two pages of the letter included additional details

on repayment, deferment, and forbearance options.  (*See id.* at 3-4.)  Approximately one

month later, on November 15, 2018, Navient notified Mr. Wong that a request for

forbearance on the Loans was approved, stating in part, "[t]his notice confirms that

you're willing but temporarily unable to make payments due to financial hardship, but

that you agree to repay your loan(s) after this forbearance expires in accordance with the

terms of your Promissory Note(s)." (*See* 10/28/14-11/15/18 Letters at 18.)

       1.     Mr. Wong's November Letter and Navient's Response

      Four days later, on November 19, 2018, Mr. Wong sent a letter to Navient which

purported to provide Navient with a "Conditional Acceptance Offer." (*See* Cannon Decl.

¶ 22, Ex. 8 ("11/19/18 Letter") at 1.)  In the letter, Mr. Wong first instructed Navient "to

CEASE AND DESIST any/all phone calls and actions!" (*Id.*)  He then stated that the

letter placed Navient in receipt of notice under the FDCPA as well as RCW 19.16 and

19.86. (*See id.* (citing 15 U.S.C. § 1692 *et seq.*; RCW ch. 19.16; RCW ch. 19.86)).  In

the next paragraph, Mr. Wong continued, "[i]n an effort to settle this matter in the most

efficient possible manner, I hereby CONDITIONALLY ACCEPT your demand for

payment in the above named matter upon your complete and total fulfillment of the

following conditions." (11/19/18 Letter at 1.)

      Mr. Wong then proceeded to lay out a series of 14 conditions, which demanded

that Navient provide him with various documents and affidavits, and perform legal

research on his behalf. (*See id.* at 2-3.)  After providing the conditions, Mr. Wong stated:

//

Contacting me again without first properly documenting that I have any obligation to you or your claimant pertaining to the above referenced account number, after <u>Verifiable Receipt of this Notice of Conditional Acceptance,</u> will establish and constitute that you deliberately intend to use interstate communications in a scheme of fraud . . . Moreover, until or unless you have fully satisfied all of my demand and claims as stated herein . . . the courts and/or others who rely upon such written communication may well judge such acts by you as deliberately intended to impair or damage my credit rating, my reputation, my standing in the community as well as to intentionally inflict financial and emotional harm upon me.

(*Id.* at 3.) Finally, Mr. Wong informed Navient that failure to accept his "Conditional Offer of Settlement" within 30 days would "constitute [Navient's] stipulation that [Mr. Wong had] no duty or obligation to any portion of the above aforementioned debt whatsoever, and that [Navient had] no right or basis to pursue any further collection." (*Id.* at 4.)

On December 10, 2018, Navient responded to Mr. Wong's letter. (*See* Cannon Decl. ¶ 23, Ex. 9 ("12/10/18 Letter").) In addition to providing contact information and the details of Mr. Wong's loans, Navient stated: "Your correspondence appears to make a legal claim sometimes referred to as 'Redemption,' 'Strawman,' or 'Acceptance for Value.' We do not recognize these claims as valid under state or federal law. Several federal government agencies have issued public warnings that these claims are frivolous and often associated with fraud schemes." (*See id.* at 1.) Navient then provided Mr. Wong with a link to a Federal Bureau of Investigations website in support of this assertion. (*See id.*)

//

//

## 2. Mr. Wong's December Letter and Navient's Response

On December 20, 2018, Mr. Wong sent another letter to Navient. (*See* Cannon Decl. ¶ 25, Ex. 10 ("12/20/18 Letter") at 1.) It was nearly identical to the November letter, with a few minor differences. (*Compare* 12/20/18 Letter *with* 11/19/18 Letter.) First, the December letter informed Navient that this was its second notice. (*See* 12/20/18 Letter at 4.) The conditions in the two letters were identical, but the December letter gave Navient 20 days to respond instead of the 30 provided by the November letter. (*See id.*; 11/19/18 Letter at 4.) Finally, both letters informed Navient that any response that did not "completely respond on a point-by-point basis" or any attempt to garnish Mr. Wong's accounts "shall be deemed as an Agreement with the facts as stated in the attached Affidavit" and result in Navient owing Mr. Wong a sum of money. (*See* 12/20/18 Letter at 4; 11/19/18 Letter at 4.) However, although the November letter stated that this sum, which Mr. Wong called "compensating damages," would be $100,000 per claim, the December letter stated that the sum would be $100,000 "for each condition for each claim plus punitive damages in the amount of four times." (*See* 12/20/18 Letter at 4; 11/19/18 Letter at 4.)

Navient's January 8, 2019, response letter was nearly identical to its December 10, 2018, letter. (*See* Cannon Decl. ¶ 26, Ex. 11 ("1/8/19 Letter") at 1.) Navient reminded Mr. Wong that it had previously responded to him. (*See id.*) Navient further stated that "[t]his letter serves as our final response on this topic; any future correspondence from you that repeats this claim will not receive a response." (*See id.*)

//

3.      Mr. Wong's February Letter and Navient's Response

On February 1, 2019, Mr. Wong sent a final letter to Navient which was markedly different than his previous two.  (*See* Cannon Decl. ¶ 28, Ex. 12 ("2/1/19 Letter") at 1.)[4] First, Mr. Wong informed Navient that it was "in breach of our contract, titled 'Conditional Acceptance' dated November 19th, 2018."  (*See id.*)  Mr. Wong then informed Navient that it was specifically in breach of the 14 conditions from the first two letters, which he proceeded to list.  (*See id.* at 1-5.)  The letter stated that Navient could "cure this breach" within 15 days of receipt of the letter by "[r]emov[ing] any and all inquiries and late notices on [Mr. Wong's] credit report," "[c]eas[ing] all collection activities," and paying "$100,000.00 USD for each condition for each claim plus punitive damages in the amount of four times."  (*See id.* at 5.)  An "invoice" was enclosed with the letter which demanded Navient pay Mr. Wong $11.2 million.  (*See id.* at 11.)

Navient responded on March 12, 2019, by sending Mr. Wong a copy of his February 2001 MPN.  (*See* Cannon Decl. ¶ 29, Ex. 13 ("3/12/19 Letter").)  About a week later, on March 20, 2019, Navient also sent Mr. Wong a list of the Loans and all transactions associated with them, including interest, late fees, and payments.  (*See* 3/20/19 Letter.)

//

//

---

[4] In the copy of this letter available as part of the record, the first page appears to be reproduced twice.  (*See* 2/1/19 Letter.)  The court cites to the page numbers supplied by its electronic docketing system.

## C.    The State Court Suit and Subsequent Removal

In June 2019, Mr. Wong filed his complaint asserting four causes of action in King County Superior Court.  (*See* Compl. ¶¶ 4.1-7.4.)  First, Mr. Wong claims that Navient negligently or willfully attempted to collect on a debt it did not have a right to collect, negligently or willfully failed to cease collection on a debt, and failed to provide verification of the debt to Mr. Wong in violation of the FDCPA.  (*See id.* ¶¶ 4.2-4.3); 15 U.S.C. § 1692 *et seq.*  Second, Mr. Wong claims that Navient was negligent because Navient "had a legal duty to conform to a standard of conduct to protect [Mr. Wong]" that it did not meet.  (*See id.* ¶¶ 5.1-5.4.)  Third, Mr. Wong brings a cause of action for negligent misrepresentation, alleging that Navient acted in a way that was intentional, extreme, and outrageous and intentionally misrepresented itself as having a contract with Mr. Wong.  (*See id.* ¶¶ 6.2-6.4.)  Finally, Mr. Wong's intentional infliction of emotional distress claim is based on the allegation that Navient's conduct was intentional, extreme, and outrageous and intended to cause Mr. Wong serious emotional distress.  (*See id.* ¶¶ 7.1-7.4.)  Mr. Wong requests $84 million in damages, as well as costs and attorney's fees, as relief.  (*See id.* at 13.)

Mr. Wong served Navient on July 18, 2019.  (*See* State Ct. R. at 2 ("Notice of Serv.").)  Navient removed the action to this court on August 7, 2019.  (*See* Notice of Removal (Dkt. # 1) at 1.)  After filing an answer to Mr. Wong's complaint on August 28, 2019 (*see* Answer (Dkt. # 15)), Navient filed this motion for summary judgment (*see* MSJ).  Mr. Wong filed no opposition to Navient's motion.  (*See generally* Dkt.)

//

# III.    ANALYSIS

## A.    **Legal Standards**

### 1.    Unopposed Summary Judgment Motion

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Aguayo v. Jewell*, 827 F.3d 1213, 1221 (9th Cir. 2016).  A material fact is one which might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 447 U.S. at 248-49).

The moving party bears the initial burden of showing the lack of a genuine dispute of material fact and that she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 248-49.  A moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)).  If the moving party meets this initial burden, "the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by

affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted) (citing, among other cases, *Celotex*, 477 U.S. at 323).

A party's failure to respond to a motion for summary judgment does not permit the court to grant the motion automatically. *See Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2016) ("[A] motion for summary judgment may not be granted based on a failure to file an opposition to the motion."). Rather, the court may only "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at 916. Where facts asserted by the moving party in an unopposed motion are concerned, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at 916. Furthermore, a plaintiff's unverified allegations contained in her complaint do not themselves create genuine disputes of material fact. *See Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006); *James*, 2016 WL 6468552, at *2 ("[A] plaintiff cannot rely on the allegations of its unverified complaint to create genuine disputes of material facts.").

2.     <u>Courts Liberally Construe Documents Filed by *Pro Se* Plaintiffs</u>

Courts liberally construe documents filed by *pro se* parties and hold "*pro se* complaint[s], however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, Rule 11 still applies to *pro se*

plaintiffs, and the court may not exempt them from sanctions purely based on their *pro se* status. *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994); *see* Fed. R. Civ. P. 11. A court may nevertheless "properly consider a plaintiff's *pro se* status in assessing sanctions." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996) (citing *Warren*, 29 F.3d at 1390).

**B.** **FDCPA Claim**

Summary judgment against Mr. Wong on his FDCPA claim is proper because Navient has met its burden to show it is entitled to judgment as a matter of law on that claim.

In order to state a claim under the FDCPA, a plaintiff must allege facts sufficient to support three threshold elements: (1) that the plaintiff is a consumer, (2) that the defendant is a debt collector, and (3) that the defendant committed an act or omission that violates the FDCPA. *See Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17-0061JLR, 2017 WL 2311662, at *5 (W.D. Wash. May 25, 2017) (citing *Robinson v. Managed Accounts Receivables Corp.*, 645 F. Supp. 942, 945 (E.D. Va. 1997)). The FDCPA defines the first two elements. *See* 15 U.S.C. § 1692(a). A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). The FDCPA excludes various types of parties from the definition of "debt collector," including "any person collecting or attempting to

//

collect any debt . . . to the extent that such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692(a)(6)(F)(iii).

Navient states in its motion and supporting materials that the Loans were not in default at the time of their acquisition.  (*See* MSJ at 9; Cannon Decl. ¶¶ 14-15; 3/20/19 Letter at 1.)  Under the unopposed summary judgment standard, the facts asserted by Navient may be considered undisputed for the purposes of ruling on this motion.  *See* Fed. R. Civ. P. 56(e)(2).  Because it is undisputed that the Loans were not in default at the time Navient acquired them, Navient is not a debt collector under the FDCPA.  *See* 15 U.S.C. § 1692(a)(6)(F)(iii).  Case law specific to Navient and other student loan servicers also supports Navient's exemption from the FDCPA under these circumstances.  *See* *Valletta v. Navient Corp.*, No. CV-16-01934-PHX-DGC, 2017 WL 1437563, at *3 (D. Ariz. Apr. 24, 2017); *Spyer v. Navient Sols., Inc.*, No. 15-3814 (NLH/JS), 2016 WL 1046789, at *3 (D.N.J. Mar. 15, 2016) ("Navient is not a 'debt collector' under the FDCPA under these circumstances because it became the loan servicer . . . while plaintiff's loan[s] were not in default."); *Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (Ex), 2016 WL 890297, at *11 (C.D. Cal. Mar. 8, 2016) ("[N]umerous courts have found that student loan servicers that begin servicing prior to default are not debt collectors under the FDCPA.").  Therefore, the court concludes that Navient is not a debt

//

//

//

//

collector under the FDCPA.  Accordingly, Navient is entitled to summary judgment on

Mr. Wong's FDCPA claim.[5]

**C.     Common Law Tort Claims**

Mr. Wong has also asserted three Washington law tort claims.  (*See* Compl.)  In

federal court actions based on diversity, the court applies the substantive law of the forum

state. *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2526901,

at *5 (W.D. Wash. May 27, 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79

(1939)).  Thus, Washington tort law applies in this case.

1.     Mr. Wong's Negligence Claim

Navient is entitled to summary judgment on Mr. Wong's negligence claim as well

because Navient did not owe a duty to Mr. Wong.  The elements of negligence are:  "(1)

the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and

(4) the breach as the proximate cause of the injury." *Diffely v. Nationstar Mortg., LLC*,

No. C17-1370RSM, 2018 WL 1737780, at *11 (W.D. Wash. Apr. 11, 2018) (citing

*Lowman v. Wilbur*, 309 P.3d 387, 389 (Wash. 2013)).  "The existence of a duty may be

predicated upon statutory provisions or on common law principles." *Id.* (citing *Degel v.*

*Majestic Mobile Manor, Inc.*, 914 P.2d 728, 731 (Wash. 1996)).

//

---

[5] Even if the court considered the unverified facts alleged in Mr. Wong's complaint, his
claim would still fail.  (*See* Compl.)  Mr. Wong does not allege that the Loans were in default at
the time when they were acquired by Navient. (*See id.* ¶¶ 3.1-3.11.)  He instead asserts that
Navient is "not authorized by any agreement or permitted by law" to collect on the Loans.  (*See*
*id.* ¶ 4.2.)  Even if this were true, he must still establish that Navient is a debt collector under the
FDCPA to bring this claim. *See Robinson*, 2017 WL 2311662, at *5.

1        Loan service providers do not owe a duty of care to borrowers under Washington

2 law. *Smokiam RV Resort LLC v. William Jordan Capital*, No. C17-0885JCC, 2017 WL

3 4224408, at *4 (W.D. Wash. Sept. 22, 2017). A loan servicer is treated as a lender for

4 the purposes of determining the servicer's fiduciary duty to a borrower. *See Ward v.*

5 *Bank of Am. Nat'l Ass'n*, No. C19-0185RBL, 2019 WL 2103124, at *3 (W.D. Wash. May

6 14, 2019) (citing *Smokiam*, 2017 WL 4224408, at *4). As a rule, lenders in Washington

7 also "do not owe a fiduciary duty to borrowers." *Smokiam*, 2017 WL 422408, at *4

8 (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 656 P.2d 1089, 1092 (Wash. App.

9 1982)). An exception to this rule exists if the lender's actions in servicing the loan

10 exceed that of a traditional lender, in which case a fiduciary duty may exist. *See id.*

11        As a loan servicer, Navient is treated as a lender for the purposes of establishing

12 whether a duty to a borrower exists. *See Ward*, 2019 WL 2103124, at *3; (MSJ at 3.)

13 The correspondence in the record and the declaration of Carl Cannon, an employee of

14 Navient, indicate that Navient did not exceed the role of a traditional lender in servicing

15 the Loans. *See Ward*, 2019 WL 2103142, at *3; (Cannon Decl. ¶¶ 18-30.) Accordingly,

16 Navient did not owe a duty to Mr. Wong to "conform to a standard of conduct to protect"

17 him. (*See* Compl. ¶ 5.2.) Because the existence of a duty is an essential element of a

18 negligence claim, Mr. Wong cannot survive summary judgment. *See Diffely*, 2018 WL

19 //

20 //

21 //

22 //

1737780. Thus, Navient is entitled to summary judgment on Mr. Wong's negligence

claim.[6]

2.  Mr. Wong's Negligent Misrepresentation Claim

Navient is entitled to summary judgment on Mr. Wong's negligent

misrepresentation claim as it has carried its burden to show that Mr. Wong lacks

sufficient evidence to support this claim.  "The tort of negligent misrepresentation

requires showing that a defendant knowingly supplied false information in the course of

business, and that [the] plaintiff reasonably and detrimentally relied on the false

information." *Thomas v. Flagstar Bank, NA*, No. C15-1309RSL, 2018 WL 1470836, at

*5 (W.D. Wash. Mar. 26, 2018) (citing *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396

P.3d 351, 361 (Wash. App. 2017)).  Navient argues that Mr. Wong cannot establish a

genuine dispute of material fact because he has not alleged any specific acts of Navient to

support this claim.  (*See* MSJ at 10.)  The court agrees.  There is no evidence in the

record to establish that Navient made any negligent misrepresentations.[7]  (*See generally*

---

[6] The allegations in Mr. Wong's complaint also fail to show that there is any genuine dispute of material fact as to whether he was injured by Navient's actions.  His complaint simply states that Navient's conduct "has injured Plaintiff."  (*See* Compl. ¶ 5.2.)  Unverified allegations contained within a complaint cannot themselves create a genuine dispute of material fact.  *See Moran*, 447 F.3d at 759.

[7] Again, even if the court considered the unsupported allegations in Mr. Wong's complaint, this claim would still fail.  Mr. Wong asserts that "[Navient] does not have the legal right to collect the sum of money requested because no sum is [owed] by [Mr. Wong] to [Navient]."  (Compl. ¶ 3.28.)  However, the FFELP permits lenders to assign their loans to third-party loan servicers.  *See* 20 U.S.C. § 1082(a)(1); 34 C.F.R. §§ 682.203, 682.700(a); *see also Chae v. SLM Corp.*, 593 F.3d 936, 939 (9th Cir. 2010) ("Lenders may assign their loans to third-party loan servicers, in which case the loan servicer must also abide by the FFELP regulations.").  Nothing indicates that the way in which the Loans were assigned to Navient was

Dkt.) As Navient has shown that there is a lack of evidence sufficient for a finding of summary judgment in its favor, the burden shifts to Mr. Wong to set forth specific facts to establish a genuine dispute of material fact. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. As Mr. Wong has not responded, there are no such facts. Thus, Navient is entitled to summary judgment on this claim.

### 3. Mr. Wong's Intentional Infliction of Emotional Distress Claim

Finally, Navient is entitled to summary judgment on Mr. Wong's claim of intentional infliction of emotional distress. "In Washington, the tort of intentional infliction of emotional distress requires that a plaintiff prove three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Bain v. OneWest Bank, F.S.B.*, No. C09-0149JCC, 2011 WL 917385, at *4 (W.D. Wash. Mar. 15, 2011) (citing *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003)). The first prong requires that the defendant's conduct be "so outrageous in character, and so extreme in degree" that it is "beyond all possible bounds of decency . . . and utterly intolerable in a civilized community." *Id.* (citing *Kloepfel*, 66 P.3d at 632). Because wrongful conduct and actual harm are necessary elements of an intentional infliction of emotional distress claim, Mr. Wong must provide specific facts supporting these elements to survive summary judgment. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

---

improper. Thus, Navient properly obtained ownership of Mr. Wong's debt, and the corresponding right to collect on that debt, in 2011, and seeking payment of the debt did not constitute a misrepresentation.

Navient argues that Mr. Wong has not provided facts that show wrongful conduct by Navient or any actual emotional distress suffered by Mr. Wong. (*See* MSJ at 10.) The documents in the record do not show conduct toward Mr. Wong that was outrageous or beyond the bounds of decency. (*See* Cannon Decl. ¶¶ 6-30, Exs. 1-14); *Bain*, 2011 WL 917385, at *4. There is also an absence of evidence, or even allegations in Mr. Wong's complaint, to support the existence of any emotional distress. (*See* Compl. ¶¶ 7.1-7.4.) In the absence of evidence of emotional distress, Navient is entitled to summary judgment on this claim.

As Mr. Wong did not oppose Navient's motion, the facts provided by Navient are treated as undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at 916. The facts asserted by Navient show that Navient is entitled to summary judgment on Mr. Wong's common law claims. Thus, the court GRANTS Navient's motion for summary judgment on these three claims, as well as Mr. Wong's FDCPA claim.

**D.    Navient's Request for a Show Cause Order**

In addition to its motion for summary judgment, Navient requests that the court issue an order to show cause to Mr. Wong, "inquiring why [the court] should not sanction him for bringing this clearly meritless and bad faith action based on knowingly false allegations." (*See* MSJ at 1.) Although Mr. Wong's conduct does not at this time merit sanctions, the court cautions Mr. Wong that the court will reconsider imposing sanctions if Mr. Wong files further meritless claims.

*//*

Federal Rule of Civil Procedure 11 sanctions are committed to the discretion of the court. *See Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005) ("We review the district court's imposition of Rule 11 sanctions, as well as its refusal to do so, for an abuse of discretion."). Under Rule 11, the court may impose an appropriate sanction on any party that files a document with the court that is frivolous, legally unreasonable, without factual foundation, or is brought for an improper purpose. Fed. R. Civ. P. 11(b)-(c). This rule applies to both represented and *pro se* parties. *See* Fed. R. Civ. P. 11 (referring multiple times to both attorneys and unrepresented parties). Rule 11(b)(3) provides that a pleading may be appropriate if the factual contentions made within it "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

In considering a motion for sanctions against a *pro se* plaintiff, a "district court is . . . not at liberty to exempt automatically" such a party based solely on their *pro se* status. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994). However, the court must take the party's *pro se* status into account when determining whether the filing was reasonable and the appropriate sanctions to impose. *See id.* For example, although *pro se* complaints are liberally construed, they may still be frivolous if they are filed after previous dismissals of suits involving the same parties and the same claims. *See id.*; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Wong's actions filed in this matter are borderline frivolous, but do not warrant sanctions. Navient argues for a show cause order based on two specific theories: (1) Mr. Wong's allegations were made with the knowledge that they were untrue; and (2) Mr.

Wong attempted to "extort Navient through an illegal contract allegedly accepted by silence." (*See* MSJ at 11-13.)

The court turns first to Navient's argument concerning Mr. Wong's allegations. This argument focuses on two primary allegations in Mr. Wong's complaint. (*See id.* at 11.) The first allegation with which Navient takes issue is Mr. Wong's assertion that Navient did not have a right to collect on his debt. (*See id.*; Compl. ¶¶ 3.28-3.29.) In Navient's favor on this point is the fact that Mr. Wong received communication from Navient pertaining to the Loans since October 2014. (*See* 10/28/14-11/15/18 Letters.) Mr. Wong also made at least one payment to Navient on the Loans prior to commencing this suit. (*See* Cannon Decl. ¶ 17; 3/20/19 Letter at 2.) However, construing Mr. Wong's complaint liberally as a *pro se* plaintiff, he may have believed factual foundation for this assertion existed. The Loans were originally issued by Citibank Student Loans, not Navient, and when Navient took possession of the Loans it was known as Sallie Mae, Inc. (*See* Cannon Decl. ¶¶ 12-15.) Furthermore, unlike cases in which courts have found suits to be frivolous because the *pro se* plaintiff has been turned away from the courts multiple times, *see Warren*, 29 F.3d at 1390; *Erickson*, 551 U.S. at 94, nothing indicates that Mr. Wong has made these claims against Navient in any previous legal proceeding (*see generally* Dkt.). It is not outside the realm of possibility that Mr. Wong made this particular allegation with the belief that it was factually sound. *See* Fed. R. Civ. P. 11(b)(3). The court will not sanction Mr. Wong for his mistaken interpretation of the law.

//

The second allegation with which Navient takes issue is Mr. Wong's assertion that Navient did not respond to Mr. Wong's letters. (*See* Compl. ¶¶ 3.22-3.26.) On this point, Mr. Wong's possible basis for the allegation is more evident. Although Navient sent correspondence to Mr. Wong in response to each of his letters (*see* 12/10/18 Letter; 1/8/19 Letter; 3/12/19 Letter), Mr. Wong specifically stated in his first two letters that Navient needed "to respond on a point-by-point basis" (*see* 11/19/18 Letter; 12/20/18 Letter). Navient's responses, although stating that they were made "in response to [Mr. Wong's] recent inquiry," did not do so. (*See* 12/10/18 Letter; 1/8/19 Letter.) Although the court does not suggest that Navient had an obligation to respond to each of Mr. Wong's demands, Mr. Wong arguably had support for his contention that he had not received a response.

The court declines to consider Navient's second argument at length. Navient argues that Mr. Wong's claims are frivolous because his letters did not establish a contract between the parties. (*See* MSJ at 13.) However, Mr. Wong has not brought a breach of contract claim here. (*See* Compl.) Thus, this argument for sanctions is not relevant to the suit at hand.

Although the court declines to issue a show cause order at this time, it cautions Mr. Wong that he is not exempt from Rule 11 sanctions as a *pro se* plaintiff, and that the court will consider imposing sanctions should Mr. Wong file documents that are frivolous, legally unreasonable, without factual foundation, or brought for an improper purpose. Fed. R. Civ. P. 11(b).

*//*

# IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS Navient's motion for summary judgment (Dkt. # 18) and DENIES Navient's request to issue an order to show cause.

Dated this 28th day of February, 2020.

JAMES L. ROBART
United States District Judge